IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION



| Pattiann Busby *et al.*<br>Plaintiff, | Case Number:    3:14-cv-00410 |
|---|---|
| vs. | |
| BANK OF AMERICA *et al.*,<br>Defendant(s) | PLAINTIFF'S MOTION FOR RULE 59<br>RELIEF |

COMES NOW Pattiann Busby, Plaintiff to seek Rule 59 Relief as the Court has, inter alia, used *Slorp v. Lerner, Sampson & Rothfuss et al.*, 2013 WL 94130 (SD Ohio, E.D. 2014)   in an arbitrary and capricious manner to deprive Plaintiff of the right to bring well-reasoned claims amidst a manifest history of fraud, to trial. See attached Memorandum of Law In Support of Plaintiff's Motion for Rule 59 Relief from the Court's Order of June 3, 2015.


Respectfully this 2nd day of July, 2015.


Pattie Busby

1

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR RULE 59 RELIEF FROM THE COURT'S ORDER OF JUNE 3, 2015

I.      Overview.

        This is a case involving a foreclosure tainted by the exact same fabrication of
evidence, *i.e.* a manufactured Assignment, that was present in *Slorp v. Lerner, Sampson
& Rothfuss et al.*, 2013 WL 94130 (SD Ohio, E.D. 2014), with a set of fabricated U.S.
Mail return receipt cards from a law firm that has a history in foreclosure Affidavit
fabrication, unlawful employment discrimination and Unjust Enrichment[1].

        NOW COMES Plaintiff Busby to respectfully note that she cannot find any
substantive analysis of the salient issues in this case even though Magistrate Merz
indicated that he understood the entire case at the Hearing of March 26, 2015 at which
point he advised Plaintiff to commence Discovery and all Parties acknowledged that
Plaintiff would have until April 10, 2015 to file any and all Amended Complaints (as
noted in Rule 26(f) Report of Parties, Dkt. 21) while he spoke highly of the Mediation
process, which was important to Plaintiff because she never got the Mediation she should
have received in the first place, because the Defendants and the State Court were
corrupting the entire process, which vitiates Rooker-Feldman.[2]  There are basically four
(4) areas that are presented here that are thoroughly argued and documented in the
Record as noted in the following segments that are cut and pasted from the identified
documents.[3]

        1.   The Court ignored a presentation of facts and arguments that Fraud vitiates an
entire proceeding.

        2.   The Court ignored a presentation of facts and arguments that Rooker-Felman
and Res Judicata did not apply in this case, going so far as to ignore Magistrate Merz own
prior ruling.

---

[1] The Court makes light of this history by stating that Plaintiff is basically asserting that if they did it once
before they must be doing it again now. In point of fact it is much more than that – Plaintiff has shown a
complete pattern and practice that supports all of her assertions.
[2] Plaintiff has today filed these Objections as a follow up to her Motion for Leave to File a Second
Amended Compliant along with a copy of her Second Amended Complaint, filed on 10 April 2015, Dkt.
32).
[3] To those documents Plaintiff now adds a recent commentary and observation by Attorney Neil Garfield,
seen below.

3.  The Court ignored a presentation of facts and arguments that show that Plaintiff is similarly-situated to the Plaintiff in Slorp; while finding that Slorp was not binding in response to Plaintiff's Request for Judicial Notice the Court nonetheless took the portions of Slorp it could use to deny Plaintiff's FDCPA claims while ignoring the portions that clearly permit Plaintiff's RICO claims.

4.  The Court ignored a presentation of facts and arguments that showed a pattern of conducted after the Lower Court Judgment that warrant relief, examination and Trial on the Merits.

## II.  From Plaintiff's Objections to Magistrate Merz' Report and Recommendations at Docket #33.

IIA.  The Magistrate Report and Recommendations Fails to Adequately Address Rooker-Feldman vis a vis all claims and issues that happened prior to the 10 December 2014, "No Sale" Entry in the Lower Court.

Magistrate Merz declined to review his own opinion by way of comparison to this case, even though Plaintiff properly put said Decision before the Court:

Magistrate Judge Merz has ruled on this issue in *Baker v. People's Choice Home Loan*, Inc., 2010 U.S. Dist. LEXIS 96454 (SD WD Ohio 2010).[4]

> The Sixth Circuit explains in *McCormick v. Braverman*, 451 F.3d 382 (6th Cir., 2006), that for *Rooker-Feldman* to apply, in light of *Exxon Mobile*, the harm to plaintiff must flow from the state court judgment, not from actions of others in obtaining that judgment. *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006)(***Rooker-Feldman* does not apply where harm flows not from the state court judgment, but from filing a false affidavit in the state court proceeding**.[5]) For example, it does not preclude a claim that the state court judgment was procured by fraud. *Brown v. First Nationwide Mortg. Corp.*, 206 Fed. Appx. 436, 2006 U.S. App. LEXIS 28077 (6th Cir. 2006).

While there was confusion in Baker because "In this case it is difficult to tell from the pleadings precisely from where Plaintiff alleges her injuries flow," there is no such confusion here. Plaintiff laid out a clear map of all of the pre and post judgment

---

[4] Magistrate Merz was and is factually mistaken when he stated at p. 7 of his Report that Plaintiff's only response to Rooker-Feldman was *Johnson v. Pushpin* – In her filings Plaintiff set forth a plethora of Rooker-Feldman cases, none of which the Court considered even though the same exact issue was observed in *Todd v. Weltman et al*.

[5] Emphasis added. This is precisely what is alleged in this case so why was the Magistrate in such a hurry to dismiss with prejudice without addressing this substantive body of case law in which he even participated?

2

lawlessness of all Defendants and why Rooker-Feldman cannot possibly obtain to obviate Plaintiff's claims.

In Ohio, *Fletcher v. Federal National Mortgage Association*, No. 3:11cv00083, 2011 U.S. Dist. LEXIS 125566, 2011 WL 5175611 (S.D. Ohio Oct. 4, 2011), followed by *Wellman v. PNC Bank*, 2012 U.S. Dist. LEXIS 22440 (SD ED Ohio 20102) is instructive:

> Applying the source of injury test, courts in the Sixth Circuit have held "'*Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding.'" *Hammond v.Citibank, N.A.*, No. 2:10-cv-1071, 2011 U.S. Dist. LEXIS 109818, 2011WL 4484416, at *3 (S.D. Ohio Sept. 27, 2011) (quoting *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007)). In *Hammond*, the plaintiff asserted his injury arose from alleged fraud perpetrated in a state court foreclosure proceeding by the filing of a false affidavit but did not oppose the state court judgment itself.
>
> The court in *Hammond* held that because the fraudulent affidavit was the source of the plaintiff's injury, *Rooker-Feldman* was inapplicable, notwithstanding that the validity of the state court judgment and the alleged fraudulent nature of the affidavit were intertwined. *Hammond*, 2011 U.S. Dist. LEXIS 109818, 2011 WL 4484416, at *4-5; *see also Brown v. First Nationwide Mortgage Co.*, 206 F. App'x 436, 440 (6th Cir. 2006) (claim that foreclosure decree was obtained through fraud not barred by *Rooker Feldman*); *Fletcher v. Federal Nat'l Mortg. Ass'n*, No.3:11-cv-83, 2011 U.S. Dist. LEXIS 125566, 2011 WL 5175611, at *3-4 (S.D. Ohio Oct. 4, 2011) (*Rooker-Feldmen* did not preclude action complaining that foreclosure was procured with false affidavits and party seeking foreclosure failed to demonstrate standing).
>
> Here, as in *Hammond*, *Brown*, and ***Fletcher***, the Wellmans assert that NCMC obtained the foreclosure judgment with a fraudulent affidavit. In addition, like the plaintiffs in *Fletcher*, the Wellmans contend NCMC was not the mortgage holder when the foreclosure action was filed, which suggests NCMC lacked standing. In short, the Wellmans allege harm from wrongdoing independent of the state court judgment. Consequently, Rooker-Feldman does not bar the Wellman's claims.[6]

Specifically, the entire issue of this case is whether Rooker-Feldman completely bars relief. It does not, and this was clear in her Memoranda in Opposition to Defendant's Motion to Dismiss, in which Plaintiff wrote:

---

[6] Wellman lost his case for reasons not relevant to this Action.

**\*\*\*\*\*\*\*\*\***

Plaintiff never got a fair shake in State Court, unlike the litigant in *McCarthy v.*
*Bank of America*, in which a Court for a change actually ORDERED Bank of America to
produce a valid Chain of Title, which resulted in immediate swift and prompt Dismissal
& withdrawal of pending foreclosure actions.  See *McCarthy v. Bank of America* 411-
CV-356 (ND Texas Forth Worth*)* contains an identical fact pattern and this court should
follow the persuasive law from that jurisdiction.

> Other States Concur: Here is yet another prime example from the
> judicially conservative State of Texas, in *McCarthy v. Bank of America*
> 411-CV-356 (ND Texas Forth Worth) (Memorandum and Order <u>Denying</u>
> Motion to Dismiss Plaintiff's Breach of Contract/Deceptive Trade and
> Collection Practices suit December 22, 2011)(Order to Produce Proof of
> Ownership of Note July 1, 2013) (Settled July 9 2013).  See Appendices
> B1-11, C1 and D1-2.

As one can readily see, once the Court ORDERED Bank of America to produce
proof of ownership of the purported claim at the **commencement** of foreclosure, the case
was SETTLED because they cannot do it. Just as in McCarthy, MERS was not mentioned
on the **copy** of the Busby purported "Note" either… It is a Case on All Fours. (Exhibit 6
of Original Complaint and Ex. 7 of 2nd Amended Complaint)

This instant case is no different and in order to dispense Justice this Court must
hold Bank of America accountable for its transgressions:

> Plaintiff's motion to file third amended complaint is granted.  Defendant's pendi
> summary judgment considered to be directed to the third amended complaint.
>
> Additional grounds for summary judgment raised.  Plaintiff has until 10:00 a.m
> respond.
>
> Defendant has until 10:00 a.m. on July 11, 2013, to provide evidence that it ow
> issue in this action.

Here are the relevant excerpts:

In *McCarthy* the limited capacity and function of MERS was explained
in the deed of trust as follows:

4

.... MERS holds only legal title to the interests granted... if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests....to take any action required of Lender

Id. **The note made no reference to MERS (MERS is not a party).**[7] MERS purported to assign the note and deed of trust to BOA. However, **MERS did not own the note,** thus it **could not assign the note**, and its assignment of the deed of trust to BOA **separate from the note was of no force or effect**. When the note was purportedly assigned to BOA, plaintiff was in default on payment of the note.

More specifically on the subject of separation of the note from the deed of trust, and the lack of ownership of the note by BOA when BOA and BAC conducted the foreclosure about which plaintiff complains, plaintiff alleged:

Instead, we saw what the State Court Judge O'Connell did, which is indeed indicative of corruption, as quoted from Plaintiff's Surreply (Dkt. 29) filed on 31 March, 2015, prior to the R&R:

But there is more and if necessary Plaintiff will file a Second and Final Amended Complaint to make it clear that Judge O'Connell was and is part of the over-arching implicit Conspiracy to deny Plaintiff's Substantive and Procedural Due Process claims. From one of Plaintiff's last filings in State Court:

1. The Busbys supplied to the court facts and law regarding everything from 1) forged signatures on Certified Mail green cards (USPS Form 3811), 2) false notarizations on documents, 3) bogus MERS "employees," 4) the fact that Bank of America never assumed the [alleged] debts and obligations from Countrywide, 5) the fact that Plaintiff is not in privity with the Busbys and 6) the fact Plaintiff was never economically harmed by the Busbys.

2. Until very recently, the Busbys afforded Judge Timothy O'Connell the benefit of the doubt that he acted fairly and impartially.

3. A reasonable person would agree that Judge O'Connell is no longer afforded any benefit of the doubt as he is blatantly biased and has acted prejudicially against the Busbys.

4. Evidence of the proceeding statement is found in the fact that Judge O'Connell knowingly violated a federal bankruptcy stay, with his Decision

---

[7] Note that MERS is NOT named on the **copy** of the Busby purported "Note" anywhere. The language in this case regarding the "deed of trust" is **IDENTICAL** to the language in the **copy** of the Busby purported "Mortgage"; which was filed as an Exhibit to the sham complaint. Originals have never been produced per Ohio Evidence Rules. This is that proverbial "case on all fours."

and Entry Granting Plaintiffs Motion to Strike the Busby's 1) Defendants'
Answer and Affirmative Defenses along with a Request for Mediation, filed
on June 9, 2014, and 3) Defendants' Motion to Reopen and 2nd Amended
Motion to Vacate Void Judgment Per Rule 60(B), filed on June 11, 2014.
BAC also opposed the Emergency Motion to Stay Sale of Real Property, filed
by the Busbys on June 11, 2014. This was all done while there was an active
bankruptcy case open. (BK Case #3:14-bk-32134)

     5. Even more shocking to the conscience of a reasonable person is the
fact that despite the courthouse closing for business at 4:30 p.m., Judge
O'Connell stayed overtime to purposely sneak in his void order at 5:50:03
p.m. as evidenced by the court Docket ID: 19175797.

     6. The speed at which Judge O'Connell <u>knowingly violated the
bankruptcy stay</u> is equally egregious and unconscionable to a reasonable
person.

     7. The record clearly and the evidence clearly reflect that there is a
consorted effort on the part of Reimer, Arnovitz, Chernek & Jeffrey Co.,
L.P.A., BAC Home Loan Servicing, LP (that does NOT even exist), Rachel
M. Kuhn and Judge O'Connell to ensure that the truth and the evidence
supporting every unrebutted statement of the Busbys is never entered into the
record.

*********

PLAINTIFF NEVER EVEN GOT THE INVITATION TO MEDIATION BUSBY
SHOULD HAVE RECEIVED AT THE OUTSET OF THIS DIRTY FORECLOSURE
IN THE STATE COURT BECAUSE THE ENTIRE PROCESS WAS TAINTED WITH
CORRUPTION – In line with all Circuit Cases dealing with Rooker-Feldman as noted by
Plaintiff repeatedly.  Plaintiff again quotes from prior filing:

That informs Judge O'Connell's adverse action against Plaintiff, after hours,

during a Mandatory Bankruptcy Stay. See *Dawaji v. Kohlhoss*, 2014 U.S. Dist.

LEXIS 138699 (2013) citing *Nesses v.Shepard*, 68 F.3d 1003 (7th Cir. 1995), and

its progeny. Doc. 45 at 2.

In *Nesses*, the losing party in a state court contract case brought suit in federal
court, alleging a "massive, tentacular conspiracy among the lawyers and the
[state]judges" against him. 68 F.3d at 1004. The Seventh Circuit observed that
*Rooker-Feldman* does not bar such a claim:

To show harm [from the conspiracy] and thus keep the present suit alive, Nesses
would have to show that the decision by the Indiana court in his suit for breach of
contract was erroneous, and that, it may appear, *Rooker-Feldman* bars him from
doing. But the doctrine is not that broad. Were Nesses merely claiming that the

6

decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. ***But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the Rooker-Feldman doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm.***

Id. At 1004. In *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), the court characterized *Nesses* as holding that "[t]he claim that a defendant in a [federal] civil rights suit so far succeeded in corrupting the state judicial process as to obtain a favorable judgment is not barred by the *Rooker-Feldman* doctrine." *Id.* at 441 (internal quotation marks omitted).

Citing *Nesses*, the Seventh Circuit held that *Rooker-Feldman* posed no obstacle to federal jurisdiction: "The rule does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff. ... Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment." *Id.* at 773.

*Pushpin Holdings* does not cite, let alone distinguish, *Taylor, Maple Lanes*, and *Golden*, which applied *Rooker-Feldman* where, as in *Pushpin Holdings*, the federal plaintiff alleged that the federal defendant had committed fraud or engaged in other dishonest conduct that led the state court to enter an adverse judgment. This court must follow all of the Seventh Circuit's precedents—unlike in *Richardson*, discussed above, the pertinent portion of *Pushpin Holdings* is a holding, not a dictum—and in a situation like this where those precedents appear to point in different directions, this court must decide which precedents are more analogous and speak more directly to the case at hand. *Taylor, Maple Lanes*, and *Golden* are more analogous to this case, in that each alleges misconduct committed by the federal defendants in a single state court proceeding.

By contrast, ***Pushpin Holdings*** alleged a massive scheme (in over one thousand cases) to defraud the state judiciary, which, the Seventh Circuit might have concluded, presented a sufficient enough risk of corrupting the state judicial machinery that *Nesses* should apply. This admittedly is speculation. But it is far more plausible than the alternative conclusion—that *Pushpin Holdings* overruled *Taylor, Maple Lanes*, and *Golden*, silently and without a Seventh Circuit Rule 40(e) circulation. Indeed, the Seventh Circuit recently cited *Pushpin Holdings, Loubser*, and *Nesses* for the proposition, uniformly reflected in the Seventh Circuit's pre- *Pushpin Holdings* jurisprudence, that the *Nesses* principle applies to "claims ... premised on detailed allegations that the winning party obtained a favorable civil judgment by corrupting the state judicial process." *Parker*, 757 F.3d at 706.

7

It is clear that the taint of the entire State Court process render Rooker-Feldman inapplicable herein. Any other approach is to make a mockery out of the entire legal process.  But that of course is how the Defendants tend to operate, making a mockery of a purported "Loan Modification" then lying to the State Court while the Judge didn't even verify the assertion that a purported "Loan Modification" had been entered, then by engaging Plaintiff in a Circus Act invitation to negotiate Settlement.

IIB.    The Magistrate Report and Recommendations Fails to Adequately Address Rooker-Feldman vis a vis all claims and issues that happened after the 10 December 2014 "No Sale" Entry in the Lower Court.

Plaintiff reiterates all that preceded in Section I, supra, and quotes from her Surreply:

> **MOREOVER,** some of the issues complained of by Plaintiff in this case occurred post-judgment in the first place so those claims could NEVER be the subject of Rooker- Feldman, and those lies and deceit besmirch this Court and the entire legal community. Even since the State Court Judgment, Plaintiff has been harmed by the Defendants' lies and refusal to enter into the alleged "Loan Modification" and will obviously be further harmed if and when the Defendants take physical possession of her home, see *Perkins v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 138221 (SD Ohio 2011)

> WHEREFORE, should there be a conflict between the Circuits on the applicability of Rooker-Feldman that results in dismissal, Plaintiff will pursue that conflict to the Sixth Circuit Court of Appeals and beyond.

III.    The Magistrate Report and Recommendation Improperly Considers Internet Evidence in Favor of Defendants while Improperly Ignoring Relevant Credible Internet Information that Destroys Defendants' Position.

As a side note, but one worthy of its own subheading, it must be noted that the Court's citation to Internet "evidence" is improper and was conducted unfairly. At p. 3 of the R&R Magistrate Merz states:

> "To flesh out the facts surrounding the Foreclosure Action, the Bank of America Defendants cite public records of the Montgomery County Common Pleas Court in the Foreclosure Action. Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice."

The magistrate failed to acknowledge the very reliable Internet evidence contained that FDIC website clearly shows how <u>Countrywide had been merged out and not in service for months prior to the forged assignment</u>. The link was in every document Plaintiff filed the FDIC website photo in. See below, emphasis added.

**https://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=33143**

**This has been a dirty foreclosure from its inception,** when Defendants issued a fake Assignment of Mortgage, the Defendants and State Court failed to offer Mediation as required by Ohio Law, after Defendants forged U.S. Mail green cards, *then fabricated an "Assignment" from "MERS" by and through a BOA employee, from an entity that had <u>ceased to exist</u> months earlier according to the FDIC and general public knowledge:*



**Inactive as of April 27, 2009.**

While the Court points out that merger typically results in a carry-over, we still have to get there legally and that is why a false Affidavit or Assignment will not pass Constitutional muster.

Mohit Pathan's SELF-POSTED RESUME on LinkedIn, as of 7 May 2015 fails to indicate any experience as a MERS executive – must be considered as well.[8]

---

[8] Instead, by discounting this, the Magistrate is not considering the facts in the light most favorable to Plaintiff, which is completely unreasonable given Defendant Pathan's own self-published resume, as well as the entire scheme of unlawful foreclosures that Magistrate Merz recognized in *Baker v. People's Choice Home Loan*, Inc., 2010 U.S. Dist. LEXIS 96454 (SD WD Ohio 2010) where he specifically identified false Affidavits as a reason that Rooker-Feldman might not apply.  In fact he even said to opposing counsel "sometimes" when Attorney Wallace stated "clearly Rooker-Feldman is sort of an adjunct of res judicata." This is one of those times that it is not, yet His Honor failed to analyze his own prior case in this context.

9

https://www.linkedin.com/profile/view?id=247680&authType=NAME_SEARCH
&authToken=_VfE&locale=en_US&trk=tyah&trkInfo=clickedVertical%3Amynetwork
%2Cidx%3A1-1-1%2CtarId%3A1431035710216%2Ctas%3AMohit%20Pathan



## Mohit Pathan

Mortgages & Retail / Consumer Banking Executive

Dallas/Fort Worth Area | Financial Services

| | |
|---|---|
| Current | Citi - Mortgages |
| Previous | Barclays Bank, Bear Stearns / Lone Star Funds, Citigroup |
| Education | University of Chicago - Booth School Of Business |

**Send Mohit InMail** ▼

**500+**
connections

in https://www.linkedin.com/in/mohitpathan

**Background**

 Summary

Extensive Mortgages experience in Residential Loan originations as well as default servicing.

Global Branch Banking and Deposit Sales experience across markets.

Have experience in building new platforms from the grounds up as well as turning around existing platforms for increased revenues.

IV.    Reimer Law Firm

Some things on the Internet are true and verifiable, such as Reimer's history of "Patently False" Affidavit making, by a name partner, in the case of *Sims v. Bloomfield Savings Bank*, Ohio Ct. App No. 8461, 1977 Ohio App. Lexis 8777 (Summit 1977). Recall, again, the language from *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006)(***Rooker-Feldman* does not apply where harm flows not from the state court judgment, but from filing a false affidavit in the state court proceeding**.[9]) For example, it does not preclude a claim that the state court judgment

---

[9] Emphasis added. This is ***precisely*** what is alleged in this case so why was the Magistrate in such a hurry to dismiss with prejudice without addressing this substantive body of case law in which he even participated? The Article III Judge and/or subsequent Courts ***must*** address this. The fate of Justice hangs in the balance.

was procured by fraud. *Brown v. First Nationwide Mortg. Corp.*, 206 Fed. Appx. 436, 2006 U.S. App. LEXIS 28077 (6th Cir. 2006).

Add that to the false green cards and the uncontroverted Affidavits of Busby and her husband that they never were even served and you have a clear-cut case for abrogation of Rooker-Feldman, so what went wrong?

Why did Magistrate Merz do a 180 degree turn from the conference hearing, in which he already knew full well the salient issues of this case?

Page 7 of Magistrate Merz' R&R states:

> The Reimer Law Firm seeks dismissal of all claims against it on the ground that they are barred by the relevant statutes of limitation.
>
> A few examples at pgs. 9 & 10:
> - Regarding Count 2: *Ms. Busby's RICO claims are time-barred*.
> - Regarding Count 5: *...is barred because it was filed well outside that time limit*.
> - Regarding Count 6: *Ms. Busby filed well after the applicable deadlines and is therefore barred*.

Plaintiff would like to bring to the Court's attention a crime so serious there is <u>no statute of limitations</u>.

**<u>What is "Fraud upon the Court"</u>**

Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court."

In ***Bulloch v. United States,*** 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated:

> "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals:

> "...to embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." ***Kenner v. C.I.R.***, 387

F.3d 689 (1968); 7 *Moore's Federal Practice*, 2d ed., p. 512, ¶ 60.23. The
7th Circuit further stated "a decision produced by fraud upon the court is not
in essence a decision at all, and never becomes final."

It is also clear and well-settled law that any attempt to commit "fraud upon
the court" vitiates the entire proceeding.

In my case, evidence was fabricated by the Defendants and all of them. The eight
Defendant Reimer attorneys were knowing participants in the fraud on the court. Bogus
documents were placed into the record; from a fraudulent Assignment of Mortgage
(prepared by F. Peter Costello, Esq.) for Defendant MERS, as nominee for Countrywide
(a DEAD entity), to fraudulent green cards alleging service. Lies were told under Oath, in
affidavits, and recorded in the Montgomery County Land Records and several filings
with the courts. Schemes were concocted to attempt to cover-up certain
falsehoods. Defendants, and all of them, were involved in all of this.

The fabrication of evidence by a party in which an attorney is implicated,
will constitute a fraud on the court." Id. at 1338 (citing to *Hazel-Atlas Glass
Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997 (1944)).

"Where the Court stated that fraud has been broadly defined as anything calculated
to deceive. It should be noted that the definition of fraud applies to everything an attorney
may be engaged in, whether in court, or in his office."

**It is well established in law that any attempt by an attorney, to deceive is
considered fraud, and when the attempt to deceive occurs in a judicial proceeding, it
is "fraud upon the Court."**

***Rules of Professional Conduct Rule 8.4.***
Maintaining the Integrity of the Profession
8.4    Misconduct
       (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
       (d) engage in conduct that is prejudicial to the administration of justice.

**Fraud Upon The Court – Judges Are Bound By The Law**

Judge Timothy O'Connell's unconscionable scheme was to continually rule against
the Defendants in spite of the evidence; or even a Federal Bankruptcy Stay in place.

Common examples of "fraud upon the court" include the fabrication of
evidence by counsel, *Greiner*, 152 F.3d at 789, and the insertion of bogus
documents into the record. *Oxxford Clothes*, 127 F.3d at 578. But, because
corrupt intent knows no stylistic boundaries, fraud on the court can take

12

many forms, *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), and courts take each case on its facts. *See Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 137 (2d Cir. 1956).

While Judge Timothy O'Connell was a victim of fraud on the court, Judge O'Connell also perpetrated fraud on the court. Judge O'Connell's wilfulness has been characterized by open defiance and reckless disregard of Plaintiff's Constitutional rights. This wilfulness is inextricably related to, but exceeds mere error.

> There is no middle ground or Judicial Discretion to make every ruling in favor of banks regardless of evidence.

Fraud includes the suppression of the truth, as well as the presentation of false information (In re Witt (1191) 145 Ill.2d 380, 583 N.E. 2d 526, 531, 164 Ill. Dec. 610). See also *In re Frederick Edward Strufe*, Disciplinary case no. 93 SH 100,

> **IMPORTANT: The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice"**, Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11,13 (1954).

### What effect does an act of "fraud upon the court" have upon the court proceeding?

"Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled that any attempt to commit "fraud upon the court" vitiates the entire proceeding. *The People of the State of Illinois v. Fred E. Sterling*, 357 Ill.354;192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); *In re Village of Willowbrook*, 37 Ill. App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything.").

Under Federal law, when any officer of the court has committed "fraud upon the Court", the orders and judgment of that court are void or of no legal force or effect.

Tampering with the administration of justice in the manner shown in my case involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies

13

of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. The judgment involves an issue of great moment to the public.

This is a crime for which no active participant has any immunity. Ironically I am not only the Plaintiff, but was also a licensed realtor who takes the law very seriously. This is all beyond the pale of anything expected within a Court Of Law. Unfortunately this is all real & well documented. I would not continue to fight this, except for a deep respect I have for what the Court is ***supposed to represent*** in Fair, Unbiased Proceedings & Justice according to the Letter Of The Law. This is anything but that -- without question.

### III.   From Plaintiff's Clarification on Motion for Reconsideration requesting Judicial Notice at Docket #43.

COMES NOW Plaintiff per FRCP 201 to explain to this Court the basis of her Motion for Reconsideration, in that her most applicable case of *Slorp v. Lerner, Sampson & Rothfuss et al.*, 2013 WL 94130 (SD Ohio, E.D. 2014) was not fully addressed by the Court, whether it is binding or not. ***The point is not whether it is binding:***

The point is that the Magistrate is still charged with a duty to apply the law. Magistrate Merz and those highly skilled staff members he referenced at the prior Hearing have a duty to research compelling and controlling cases.

### I.   Ground One: Selective Application of Sixth Circuit Decisional Law in Slorp.

In this case Merz notes that Plaintiff "excoriates" him but he misses the REASON. The REASON is because he gerrymandered Slorp to use only the part he wanted to use to run Plaintiff out of Court. From the Magistrate's Decision Denying Reconsideration he writes "In fact, there is an analysis of Slorp in the original Report and Recommendations."

> The Sixth Circuit's opinion in *Slorp* is not an "adjudicative facts" within the meaning of Fed. R. Evid. 201. Instead, it is a part of the law, case law as opposed to statute or constitution. It is not binding precedent, as Busby argues, because it is not a published opinion of the Sixth Circuit whose Rule 24 in that regard is quoted at the outset of the reported opinion.
>
> Busby excoriates the Magistrate Judge for ignoring or not finding *Slorp* (Motion, Doc. No. 43, PageID 1147). In fact, there is an analysis of *Slorp* in the original Report and Recommendations (Doc. No. 31, PageID 924).

14

Plaintiff is well aware that there is a perfunctory analysis of *Slorp* that uses only the portion of Slorp that addresses the failed FDCPA claim while Magistrate Merz for some inexplicable reason completely IGNORES the part where Slorp finds in favor of the homeowner on the RCIO matters on the same identical fact pattern.  In case Magistrate Merz missed it here it is again:

*********

The Sixth Circuit resoundingly held that lawyers were misleading the Court by characterizing the homeowner's claim as seeking damages for a false assignment. The Court held that if BOA did not have any right to foreclose the mortgage then it doesn't matter whether or not the homeowner defaulted.  That is the law of the Land in this Jurisdiction and there are no ifs, ands or buts to be asserted and the Court must apply the law as it knows it to be.

To quote from a prior filing:

> Pathan's resume is self-posted on the LinkedIn website, which is presumptively under Pathan's exclusive control. That clearly creates a prima facie argument or a rebuttable presumption that Pathan never did work "for MERS." (See Exhibit 3). That is fatal in the 6th Circuit under *Slorp v. Lerner, Sampson & Rothfuss et al.*, 2013 WL 94130 (SD Ohio, E.D. 2014). **Pathan must testify**.

If the foreclosing party has not established a valid, bona fide legal relationship with the loan as owner, holder, servicer or anything else, the alleged "default" simply DOES NOT MATTER. See *Slorp v. Lerner, Sampson et al*. Sixth Circuit Court App. No. 13-3402:

> According to the Complaint, Bank of America filed a foreclosure action against Slorp despite its lack of interest in the Mortgage, the Defendants fraudulently misled the Court (all Courts in this instance) by fraudulently misrepresenting Bank of America's interest in the suit; and Slorp incurred damages when he was compelled to defend his interests….. that is all that is required for count one, which alleged a violation of the FDCPA – a Federal statute.

> If the Defendants were not authorized to initiate the foreclosure proceedings, Slorp's injuries were cause by their fraud rather then his own alleged default.

> LSR also contends that "Slorp must allege sufficient plausible facts to indicate that LSR and Ms. Hill made a material misrepresentation of the fact to Slorp that was calculated or intended to deceive Slorp. Slorp has done just that. Slrop's Complaint alleged that LSR and Hill filed a state-Court Complaint against him misrepresenting that his mortgage had been assigned to Bank of America. He

further alleges that LSR executed a fraudulent assignment and served it on Slorp in connection with the foreclosure action. According to Slorp, these material misrepresentations were intended to deceive both Slorp and the state Court. Slorp therefore has alleged precisely what LSR demands of him....

....Accordingly the district Court erred when it determined that amendment of Slorp's complaint to include a RICO Count would be futile.

Attorney Doucet explains what Magistrate Merz refuses to analyze:

http://www.troydoucet.com/racketeering-lawsuit-over-robo-signing-can-proceed/

Racketeering Lawsuit over Robo-Signing Can Proceed Sep 30, 2014 | Posted by aaron | Uncategorized | 1 comment Yesterday, a federal appeals court ruled that a RICO lawsuit against Bank of America, its law firm, a law firm employee, and MERS could proceed.

The United States Court of Appeals for the Sixth Circuit ruled that a Racketeer Influenced and Corrupt Organizations Act ("RICO") lawsuit could proceed against Bank of America, NA ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), the law firm of Lerner Sampson and Rothfuss, and one of the law firm's paralegals, for illegal robo-signing in an earlier state court foreclosure action.

The homeowner sued the four entities alleging that the law firm submitted a robo-signed mortgage assignment in an earlier foreclosure knowing that document was fraudulent. The lawsuit alleges that the law firm acted for BANA when it used that mortgage assignment to establish BANA's ability to foreclose on the homeowner's home, despite knowing the document was false. The lawsuit included multiple examples of this particular paralegal signing mortgage assignments on behalf of defunct companies, in what has become known as "robo-signing."[10]

## II. Ground Two: Failure to Address Magistrate Merz' Own Prior Cited Case Law.

Just as Merz ran away from the parts of Slorp that he did not like, he ran away from his own case law. They also have a duty to research and to comment on prior opinions they have written that are relevant to the case at hand, and have failed in that regard as well as noted in Plaintiff's prior Memoranda in Opposition to Magistrate Merz' Report and Recommendations, not addressed by the Judge as of his writing.

---

[10] Is there something that Attorney Doucet is missing here? If so, perhaps the Court should report him to the Bar for willful misrepresentation of the Appellate Decision. If not then the Court, by and through Magistrate Merz, should have applied this analysis instead of just ignoring it to cowtow to big bank interests.

IV.     **June, 2015 commentary from Attorney Neil Garfield and** *Iqbal v. Patel*, **2015**

        **U.S. App. LEXIS 3241 (7th Cir. 2015)** - indicates that Plaintiff's case should not

have been dismissed and she should have been permitted to file her First Amended

Complaint.

## Rooker Feldman Explained — Finally
by Neil Garfield https://livinglies.wordpress.com/2015/06/23/rooker-feldman-explained-finally

The RF doctrine is generally thought to mean that anything that was litigated in state
court cannot be brought up in Federal court and that the reverse is also true. One of my
anonymous contributors has detected a case that makes the whole RF doctrine thing and
res judicata doctrines COMPARED and found to be different.

Here is what he sent me from the decision
http://commercialforeclosureblog.typepad.com/indiana_commercial_forecl/2015/06/dism
issal-of-mortgagors-post-foreclosure-federal-lawsuit-usually-but-not-always.html

from the case:
What *Johnson* adds -- what the defendants in this suit have failed to appreciate is that
federal courts retain jurisdiction to award damages for fraud that imposes extrajudicial
injury. The Supreme Court drew that very line in *Exxon Mobil*:

Nor does [the doctrine] stop a district court from exercising subject matter jurisdiction
simply because a party attempts to litigate in federal court a matter previously litigated
in state court. If a federal plaintiff "present[s] some independent claim, albeit one that
denies a legal conclusion that a state court has reached in a case to which he was a party,
then there is jurisdiction and state law determines whether the defendant prevails under
principles of preclusion." GASH Assocs. v. Rosemont, 995 F. 2d 726, 728 (7th Cir.
1993); accord *Noel v. Hall*, 341 F. 3d 148, 1163–1164 (9th Cir. 2003).

544 U.S. at 293. In other words, if a Plaintiff contends that out of court events have
caused injury that the state judiciary failed to detect and repair, then a district court has
jurisdiction – but only to the extent of dealing with that injury. As we wrote in Johnson,
the federal court cannot set aside the state court's judgment.

**Iqbal alleges that the defendant conducted a racketeering enterprise that predates
the state court's judgments. He cannot have those judgments annulled, but can
contend that he was injured, out of court, by being "set up" by Patel and Johnson so
that they could take over his business and reap the profit he anticipated. The
district court believed that any pre-litigation fraud is "intertwined" with the state court
judgments and therefore forecloses federal litigation, but *Exxon Mobil* shows that
the *Rooker-Feldman* doctrine asks No. 14-1959 5 what injury the plaintiff asks the
federal court to redress, not whether the injury is "intertwined" with something
else. See 544 U.S. at 291; see also *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732,
734 (7th Cir. 2014) (depreciating any injury into what is intertwined with what).**

17

**Because Iqbal seeks damages for activity that (he alleges) predates the state litigation and caused injury independently of it, the Rooker-Feldman doctrine does not block this suit. It must be reinstated.**

Logically the district court's next inquiry is whether the doctrine of claim preclusion (res judicata) applies. (*Exxon Mobil* observes, 544 U.S. 293, that preclusion differs from the *Rooker-Feldman* doctrine and comes to the fore once the federal court concludes that it has subject-matter jurisdiction.) At least two decisions by intermediate appellate courts in Indiana hold that fraud causing nonpayment is a compulsory counterclaim in a debt-collection suit. *Ratcliff v. Citizens Bank*, 768 N.E.2d 964, 967-69 (Ind. App. 2002); *Broadhurst v. Moenning*, 633 N.E.2d 326, 331-32 (Ind. App. 1994); Cf. *Fox v. Maulding*, 112 F.3d 453 (10th Cir. 1997) (similar conclusion under Oklahoma law). State law determines the rules of preclusion, see 28 U.S.C. §1738, so the district court will need to decide whether the Supreme Court of Indiana is likely to agree with these decisions, and if so, whether there is any exception to the rules of preclusion. The court also will need to consider whether Patel and Johnson receive the benefits of any compulsory-counterclaim requirement, given that S-Mart Petroleum was the sole plaintiff in the state actions. The Judgment is reversed, and the case is remanded for further proceedings consistent with this Opinion.

From the beginning to the end, this case was a set up. There was a fraudulent Assignment as in Slorp. There was a failure to Mediate as noted and required by an Ohio Supreme Court Justice. And of course there was a set of fabricated U.S. Mail return receipt cards from a law firm that has a history in foreclosure Affidavit fabrication, unlawful employment discrimination and Unjust Enrichment[11].

### V.   Plaintiff's Motion for Leave to File a First Amended Complaint was Not Futile: From Plaintiff's Proposed First Amended Complaint (Docket #11)

## SEVENTH COUNT–VIOLATION OF LETTER AND SPIRIT OF ANTI DUAL-TRACKING PRINCIPLES OF 2014 DODD FRANK CFPB RULES.

190.   In 2014 Congress and the CFPB strengthened measures designed to prevent the yo-yo abuse that homeowners face when promised a loan modification while the purported lender and servicer move along with foreclosure and possession attempts.

191.   In 2014, after such measures were enacted, Defendants engaged in precisely the prohibited conduct by using a purported "loan" modification to back out of a sale date, lure Plaintiff into believing a settlement was imminent, then yanking the rug out

---

[11] The Court makes light of this history by stating that Plaintiff is basically asserting that if they did it once before they must be doing it again now. In point of fact it is much more than that – Plaintiff has shown a complete pattern and practice that supports all of her assertions.

from underneath her, much the same way that Attorney Peluso and Defendants have done here by initiating settlement discussions and then subsequently stonewalling in an attempt to make Plaintiff look bad before the Magistrate. Loathsome activity on all Defendants parts.

## EIGHTH COUNT–VIOLATION OF CLEAN HANDS DOCTRINE.

Moreover, Plaintiff wins under the Doctrine of Unclean Hands per *Sutter v. U.S. Nat'l Bank* (In re Sutter), 665 F.3d 722 (E.D. Mich 2012)(Sutter v. U.S. National Bank 665 F.3d 722  (U.S. Ct. App 6th Cir 2012)(*Accord Option One Mortgage v. Schoenlein* 05CA100. (5th Dist. Ohio App. Nov 24, 2006) (forged mortgage documents = Mortgage void ab initio). See and contrast *GMAC Mortg. LLC v. Jackson*, 2013-Ohio-2150 (3rd App Dist 2013) in which the purported lender actually did engage in modification and settlement options instead of lying to the State and Federal Court.

The doctrine of clean hands is based on the maxim of equity that provides "he who comes into equity must come with clean hands." *Seminatore v. Climaco, Climaco, Lefkowitz & Garofolia Co., LPA.*, 8th Dist. No. 81568, 2003 Ohio 3945, ¶ 26, citing *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45, 610 N.E.2d 450 (9th Dist.1991). For the doctrine of unclean hands to apply, the offending conduct must constitute reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness.

> **It is abundantly clear that this case meets that threshold from its inception, when Defendants issued a fake Assignment of Mortgage, the Defendants and State Court failed to offer Mediation as required by Ohio Law, after Defendants forged U.S. Mail green cards and through the present time as Defendants offer up fake Loan Modification offers and with Attorney Peluso interjecting herself into this mess, and showing up to negotiate settlement then disappearing from the face of the Earth while the rest of the Defendants hope and pray that this Court throws Plaintiff to the curb. The Court has full authority to review and to act, per *Johnson v. Pushpin Holdings*, LLC, 748 F.3d 769 (7th Cir. 2014).**

## VI.   Plaintiff Has Standing to Pursue these Issues.

Plaintiff has noted how the various Courts have changed their rationales over the course of time. Plaintiff has been told she didn't have standing, and the record reflects that Magistrate Merz – when not ignoring his own Decisional case law -- has vacillated

between initially stating that Rooker-Feldman barred Plaintiff's claims to saying it is
Res Judicata.

With that backdrop firmly in place, then please note that other legal
professionals, including Court have clearly opined in favor of Plaintiff's prior *Livonia
Properties* analysis that is part of the Record.  From Attorney Jeff Barnes:

> As our readers know, whenever a homeowner seeks to challenge an
> assignment of mortgage (or deed of trust), "bank" attorneys chant the
> mantra "the borrower has no standing to challenge an assignment as he is
> not a party to it", allegedly relying on the body of case law which stemmed
> from the decision of the US Court of Appeals for the 6th Circuit in *Livonia
> Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings,
> LLC*, 399 F. App'x 97 (6th Cir. 2010).  Unfortunately, many courts across
> the US jumped on the bandwagon, apparently having never actually read
> the full opinion or the 6th Circuit's more recent decision in *Slorp v. Lerner
> et al.*, No. 13-3402 (6th Cir. September 29, 2014), which clarified the
> erroneous application of *Livonia Properties* (with citation to several post-
> *Livonia Properties* decisions) and which the 6th Circuit itself stated (as to
> the *Livonia Properties* case) "has confounded some courts and litigants".
>
> In partially reversing the trial court, the 6th Circuit held the following:
>
> The sweeping rule that the district court extrapolated from *Livonia
> Properties* dwarfs our actual holding in that case. The district court
> in *Livonia Properties* stated that an individual "who is not a party to an
> assignment lacks standing to challenge that assignment", and our *Livonia
> Properties* opinion quoted and endorsed that general statement, perhaps
> inartfully. **But we quickly limited the scope of that rule, clarifying that
> a non-party homeowner may challenge the validity of an assignment to
> establish the assignee's lack of title, among other defects.** *See also
> Carmack v. Bank of N.Y. Mellon*, 534 F. App'x 508-511-12 (6th Cir.
> 2013)("*Livonia's* statement on standing should not be read broadly to
> preclude all borrowers from challenging the validity of mortgage
> assignments under Michigan law.") **Thus, a non-party homeowner may
> challenge a putative assignment's validity on the basis that it was not
> effective to pass legal title to the putative assignee.** *See Conlin v. Mortg.
> Elec. Registration Sys.,*714 F.3d 355,361 (6th Cir. 2013); *...see also Woods
> v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353-354 (1st Cir. 2013)("the
> debtor may also question a plaintiff's lack of title or right to sue").
> (emphasis added)

> [Once again, Slorp is carefully analyzed in a way that Magistrate Merz
> and this Court failed to do]

The *Slorp* opinion went on to distinguish the facts in *Livonia Properties* to clarify that the homeowner lacked "standing" to assert that the assignment was not properly recorded or suffered from some technical defects that prevented the assignee from establishing chain of title, but that in the *Slorp* case, the homeowner alleged that Bank of America, the putative assignee, held neither the mortgage nor the note when it filed the foreclosure action because the parties lacked the authority to assign his mortgage to Bank of America. The court stated: "That distinction makes all the difference".

However, "bank" attorneys have consistently taken the position that the rejected "sweeping" rule applies. Without a proper argument from the homeowner to highlight the error, courts across the US have gone along with this erroneous non-principle of law. In fact, we just reviewed a decision from a state supreme court which was recently issued (and issued well after *Slorp*) which **still** clung to the erroneous "*Livonia Properties*" rule, without even mentioning the later cases which clarified the error.

In a second example, a District Court of Appeal in Florida previously issued the same type of "sweeping" rule stating that a borrower has no standing to challenge noncompliance with the PSA, grounded on the same argument (that the borrower is not a party to the PSA contract). Although the opinion deals ONLY with PSAs, "bank" attorneys have taken the position that this "rule" applies to prospectuses, SEC 15D filings, SEC interim reports, and all manner of documents relating to securitization trusts. **Thus, once again, the "bank" attorneys have perverted the actual holding of case law, and without proper opposition, the courts are again "drinking the Kool-Aid"**.

Granted, many courts do not have full-time law clerks to really dig into the arguments made by the "banks" and servicers, but there should be at least a minimal inquiry. **A simple WestLaw search on *Livonia Properties* would have revealed the subsequent decisions which clarified and limited it. The fact that this is apparently not being done is a sad commentary on the system, and leads the public to question the integrity of and distrust the judicial system**.

Jeff Barnes, Esq. **http://foreclosuredefensenationwide.com/?p=588**

Thus, for example, misguided Courts issue wrong decisions in cases like *McGill v. Impac CMB Trust Series 2007-A*, 2013 U.S. Dist. LEXIS 112575 (Middle Dist. 2013):

In its previous order, the Court determined that Plaintiffs lacked standing to pursue two of their claims and that those causes of action (Counts I and II) were subject to dismissal because the Court lacked subject matter jurisdiction. See (Doc. 36; Doc. 37). The Court determined that:

Although the Eleventh Circuit has yet to rule on the issue, I am persuaded by courts across the country that have determined that plaintiffs "who are not parties

21

to or third party beneficiaries of a [Pooling and Servicing Agreement ("PSA")], lack standing to challenge the validity of or noncompliance with the terms of a PSA" or the validity of the assignment or transfer. See In re Kain, No. 08-08404-HB, 2012 Bankr. LEXIS 1406, 2012 WL 1098465, at *8 (Bankr. D.S.C. March 30, 2012)("[I]t appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, i.e., the PSA."); In re Walker, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) (same); Estate of Jerry Malloy, No. 11-12922, 2012 U.S. Dist. LEXIS 7351, 2012 WL 176143, at *5 (E.D. Mich. Jan. 23, 2012) ("Plaintiffs, who are not parties to the challenged assignments, lack standing to bring claims that question their validity.").

Plaintiffs have not alleged that they were parties to or third party beneficiaries of the PSA and nothing in the record would support such a finding. Accordingly, I find that Plaintiffs lack standing to challenge the validity of the assignment/transfer and Defendants' compliance with the PSA. Because the Court lacks jurisdiction to consider this claim, I respectfully recommend that Defendants' motion to dismiss be granted on this ground.

. . . .

Plaintiffs' claim for declaratory judgment is based on the same argument challenging the validity of the transfer/assignment under the PSA. (Doc. 24 ¶¶ 39-46). Accordingly, I respectfully recommend that Defendants' motion to dismiss Count II be granted due to Plaintiffs' lack of standing.

(Doc. 36 at 4-5).
Plaintiffs have not offered any evidence to overcome the Court's jurisdictional finding. They merely argue that the Court should allow the case to go to trial on its merits. (Doc. 38 at 2). They completely ignore the fact that the Court is prohibited from considering the merits of these claims because Plaintiffs have no standing to assert them. Therefore, I respectfully recommend that Plaintiffs' motion be denied as to Counts I and II of their Complaint.

**And that is yet another example of a Court that has missed the boat.**

**VII.    The Case Cannot be Dismissed While Meaningful Discovery is Incomplete.**

See *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870-71 (11th Cir. 1988); *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988); and *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997).

22

From Snook:

> The plaintiffs filed a request for production of documents in the district court. The plaintiffs requested, among other things, all documents that were relied upon in preparing any documents or filings in connection with the dissolution of TPC; all documents that related to the valuation of the timberlands; all documents relating to the amount of commissions earned by the trustees prior to and following the liquidation of TPC; and all documents relating to the consequences of paying $ 5,000 for each outstanding share of TPC. The defendants filed a general objection to all of plaintiffs' requests for discovery and, as noted above, the plaintiffs filed a motion to compel production of the documents requested. The district court never ruled on that motion. The plaintiffs argue that their inability to obtain the documents requested makes the granting of summary judgment improper.

> In reviewing a district court's grant of summary judgment, this court's review is "plenary and is to be conducted utilizing the same legal standards as those imposed upon the district court." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988). The Supreme Court has recently addressed the standards for granting motions for summary judgment. In *Celotex Corp. v. Catrett*, the Court addressed the burden to be placed on the nonmoving party as follows:

> > In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

> > 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265, 273 (1986) (emphasis added).

> This court has recently considered the application of *Celotex*, and other recent Supreme Court cases, to cases in which the nonmoving party has not had an adequate opportunity to conduct discovery. In *WSB-TV v. Lee*, we reviewed the Supreme Court's decisions in *Celotex*, in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and in *Matsushita Electric Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). We concluded that the common denominator of the three cases is "that summary judgment may only be decided upon an adequate record." 842 F.2d at 1269. Because the plaintiffs in *WSB-TV* had been afforded no opportunity for discovery, we held that consideration of the defendant's motion for summary judgment was erroneous.

> This court has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. *E.g., Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1145 (5th Cir. 1973) (en banc), *cert. denied*, 414 U.S. 1116, 94 S. Ct. 849, 38 L. Ed. 2d 743 (noting the high fatality rate of summary dispositions at a time before the

23

facts have been fully developed);*Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Company*, 606 F.2d 602, 609 (5th Cir.1979), *cert. denied*, 449 U.S. 820, 101 S. Ct. 77, 66 L. Ed. 2d 22 ("Summary Judgment should not, therefore, ordinarily be granted before discovery has been completed."); *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir.1980) (citing *Alabama Farm Bureau*). The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. *Parrish v. Board of Commissioners of the Alabama State Bar*, 533 F.2d 942, 948 (5th Cir.1976). If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. *Id.* Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests. *Cowan v. J.C. Penney Company, Inc.*, 790 F.2d 1529, 1532 (11th Cir.1986).

The issue of inadequate discovery was called to the district court's attention by the parties in their briefs addressed to the motion to compel. In their response to the plaintiffs' motion to compel, defendants asserted that a ruling in their favor on the pending motion to dismiss or for summary judgment would render moot any discovery issue. Plaintiffs responded to this assertion by reminding the district court that "motions for summary judgment are premature and should not be granted until the party opposing such a motion is permitted to make discovery essential to his case."  Therefore, the district court should have been aware of the plaintiffs' contention that they had not been able to obtain, through discovery, evidence essential to their opposition to the motion for summary judgment. The discovery requested was clearly relevant to the pending motion for summary judgment, both as to the securities fraud and RICO counts.

The same exact issues are manifest in this case. These are **material issues** that have been sought by extrajudicial and judicial means *for years.*

The failure to allow Plaintiff's Motion to Compel to allow exposing the completely fraudulent endeavor that precipitated and continued through this case is clearly erroneous, reversible error.

## VIII.   Conclusion and Prayer for Relief.

Considering the relevant circumstances and the specific details of the case at hand, the Court's order of dismissal with prejudice is utterly misplaced. In truth, the facts and the law indicate that Plaintiff's case is not dismissible, since the arguments she has

24

advanced are meritorious. The weight and sufficiency of the evidence are in favor of Plaintiff, to the point that it would be grossly incongruent to rule for the Defendants.

The Magistrate failed to address the relevant case law as set forth by Plaintiff, ignored the liability for fraudulent actions that harmed Plaintiff and continue to threaten to harm Plaintiff as another tentacle of the Defendants' ring of RICO-infused criminality.

It is clear that Plaintiff should have been allowed to bring these arguments to bear in the First Amended Complaint.

1.    The Court ignored a presentation of facts and arguments that Fraud vitiates an entire proceeding.

2.    The Court ignored a presentation of facts and arguments that Rooker-Feldman and Res Judicata did not apply in this case, going so far as to ignore Magistrate Merz own prior ruling.

3.    The Court ignored a presentation of facts and arguments that show that Plaintiff is similarly-situated to the Plaintiff in *Slorp v. Lerner, Sampson & Rothfuss et al.*, 2013 WL 94130 (SD Ohio, E.D. 2014); while finding that *Slorp* was not binding in response to Plaintiff's Request for Judicial Notice the Court nonetheless took the portions of *Slorp* it could use to deny Plaintiff's FDCPA claims while ignoring the portions that clearly permit Plaintiff's RICO claims.

4.    The Court ignored a presentation of facts and arguments that showed a pattern of conducted after the Lower Court Judgment that warrant relief, examination and Trial on the Merits.

5.    The Court should not have granted Summary Judgment while meaningful discovery was still being sought, as it had been for years.

Respectfully submitted this 2nd day of July, 2015.


_____
Pattie Busby

## CERTIFICATE OF SERVICE

I, Pattie Busby, hereby certify that on or about July 2, 2015, a copy of the Plaintiff's Motion for Rule 59 Relief was mailed via first class mail and emailed to the following recipients:

David A. Wallace, Esq., (0031356)
c/o Carpenter, Lipps & Leland, LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
614.365.4100 phone
614.365.9145 fax
*Attorneys for Defendants:*
BANK OF AMERICA, N.A.,
successor, by merger, to
BAC Home Loans Servicing LP,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
MOHIT PATHAN

Timothy T. Brick (0040526)
c/o GALLAGHER SHARP
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
Telephone: (216) 241-5310
Facsimile: (216) 241-1608
E-mail: tbrick@gallaghersharp.com
*Attorneys for Defendants:*
REIMER, ARNOVITZ, CHERNEK &
JEFFREY CO., L.P.A.
30455 Solon Road
Solon, OH 44139

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge.

Executed this 2nd day of July 2015, at Montgomery County, Ohio

Pattie Busby